is in the marriage of Guanyin Duano Tao versus Rongjia Tao, and we have Ms. Cheryl Interview Viah, and we have Mr. Scott Coombs in the afternoon. Thank you, Your Honor. May it please the Court. My name is Cheryl Interview. I'm here on behalf of Dr. Tao, who is the appellant in this matter. This case stems from a divorce proceeding that goes back to 1999 and an order that was issued in 2000 that divorced the parties and divided the assets. Judge Jones presided over those proceedings at that time, and subsequently, six years later, on February 14, 2007, Mrs. Tao filed a petition for rule to show cause. At that time, Judge Jones had already retired from the bench, and the cases were heard by Judge Schwartz down in Jackson County. There were two hearings held in this matter, and eventually an order was issued by the trial court finding Dr. Tao in indirect civil contempt. There are five issues that were presented to this court on review, which stemmed from the 2010 trial court orders. All of those issues stemmed from the trial court's absolute disdain for my client, and that resulted in the trial court monetarily penalizing my client to the tune of $48,722.13. So why is it on Issue 1 with the interest at 9 percent, why is that an abusive discretion? The statute says 212.03 says judgments recovered in any court shall derive interest at a rate of 9 percent. Well, Your Honor, if you look on the brief, the case law also indicates that that statute is not applicable with regard to family law cases. The real problem with the interest isn't so much whether you use that statute or what percent you want to use. It is the fact that when you have an award for interest, there are two certain findings that have to be made. Number one, that the amount was certain, and number two, that the person who retained the funds had improperly enjoyed the use of it. Mrs. Tao's brief conceded that the trial court did not find an actual date of provision in this matter until 2008, and therefore it is our position that awarding interest all the way back to August 2001 is completely contrary to law if it doesn't meet the first prong. That aside, there was evidence in the record put forth by Dr. Tao that indicated that a portion of the bank account monies were changed over into stock, and that stock was previously transferred to Mrs. Tao, and therefore the amount of money that was awarded by the judge was actually erroneous. And if, in fact, Mrs. Tao did have control of the money at that time, then certainly Dr. Tao could not have improperly enjoyed the use of it if she already had it. So those were the issues with regard to the interest, and the reason these all start to become important is that the trial court had good reason to be upset with Dr. Tao. There was evidence in the record that clearly indicated that there were issues with the way he handled the $2,000 federal tax returns by signing the names and allegations of forgery, and certainly that would upset any judge listening to the case, and I'm not here to say that that would not upset a judge. However, this was not a criminal proceeding. It was a rule to show cause related to the disbursement of the party's assets, but it turned into the trial, conviction, and punishment of Dr. Tao. And like the first issue showed, the interest, the evidence was in the record that showed when the dates were provided and the amounts that should have been provided. The second issue is actually just as clear. The trial court awarded a loan to, well, actually penalized Dr. Tao for an alleged loan between Mrs. Tao and her brother. In the order, despite the fact that this is clearly a loan between siblings, and the fact that the trial court knew that the case A1 allowed for a finding of a family loan to be a marital asset regarding siblings, he did not look at the factors that were involved when they discussed the A1 case. Basically, if you look, and it's mentioned by Mrs. Tao's brief as well, they said they didn't need to have this heightened scrutiny for family loans. Well, and the reason for that is because they made a credibility finding with regard to Dr. Tao. Well, even if Dr. Tao is the least credible person on the face of the earth, that doesn't suddenly create an automatic loan marital debt between Mrs. Tao and her brother. And if you look at the things that are analyzed in both A1 as well as Blazes, which was actually a marriage loan between a mother and a son, there's nothing for this court to even analyze about the loan. There's a piece of paper that's signed by Mrs. Tao that says she's going to pay the money back to her brother when she receives the assets from the divorce. Never mind that this piece of paper, this loan suddenly came up and was received, or well, the loan was allegedly undertaken six days after Judge Jones issued a letter ruling saying, once I issue the divorce dissolution, each party's going to be responsible for its own debts. Up till then, Dr. Tao was supposed to be responsible. But if you look in this record, there's no repayment plan, no term for the loan, no interest attached to the loan. There's no evidence that Mrs. Tao's brother even gave the money to Mrs. Tao. There's no evidence on how the funds were spent except by her own testimony, which kind of changed throughout the record. And the receipt isn't even signed by her brother, the person who she would be repaying it. And, you know, you get into how does this suddenly become a loan based on credibility of Dr. Tao? It doesn't. And that is the problem with this case, is that the ultimate result by the trial court was intended to punish Dr. Tao. And when you look at all of these things that they keep finding, that, you know, the next one was the overpayment to Mrs. Tao in the Invesco account. Even if you take all of Dr. Tao's testimony out, there's still evidence in the record that the two things that the trial judge said he couldn't make the award on are there. All he had to do was look. The judge, her attorney at the trial said, we conceded. If they were overpaid, we'll make sure we'll get it traded back so that it's even. We're not trying to get something we're not. And even the counsel here in the appellate court conceded that the transfer was made. Why would a judge not grant the credit when clearly the credit is due? And it brings us back to the same problem, which is the trial court was very disdainful of my client moving into an arena of bias where he was hostile. He didn't trust him. And you see all these in his notes. When you look at the docket sheet, it's clear that the trial court had a bias towards Dr. Tao. And when you get to the orders, and specifically the order on reconsideration, he had absolutely, just absolute disdain for Dr. Tao. And those were small potatoes. You know, we get into two other big issues. He decides he's going to start wading into the tax arena. There was a motion or there was an objection related to subject matter jurisdiction. These are taxes from 2001 that are being reviewed in 2008 because there were allegations by Mrs. Tao that the filings were erroneous. Well, the trial court in Jackson County is not the U.S. tax court. The U.S. tax court has certain rules and regulations that have to be applied and utilized when assessing penalties for someone for something they have done on their taxes. They have the sole jurisdiction to review these sort of issues. Despite that, the trial court decided it could. And so it did. It ignored the three-year statute of limitations underneath the regulations that say if you're going to have a penalty, it's got to come three years later. It didn't go into that either. In fact, they just didn't find themselves bound by any jurisdiction whatsoever so that they could address what was wrong with the 2001 taxes. Now, keeping this in mind, this is not a criminal contempt proceeding. And everything that he is being judged on is something that he has done in the past, that there is nothing that he can undo, and there is nothing but punishment associated with it. There is no coercion to tell him to do something correct in the future. It's all based on past acts. And if you look at in-ring marriage defense and in-ring carpool, which are toward the end of the first brief, this is exactly what happens. You can't do this. If you're going to penalize somebody for something they did in the past and essentially punish them for those acts, you have to bring a different petition. It's either a will to show cause petition for criminal contempt. Bring that. They get their rights read to them. They're told not to testify if it's going to be a problem. And they have all these rights just like you would in a criminal trial. And that was done. But if you look at everything that the trial court awarded benefits to Mrs. Tao and penalized Dr. Tao, every one of those actions occurred in 2001. I mean, there was nothing he could do about it by 2008. So anyway, we get into this whole let's look at the 2001 taxes, and they drag in an expert. Well, before they do that, and if you look at the trial court's order, and this is one issue that we have asked the court to issue a ruling on as a matter of law. The award of $10,400 related to the alleged capital gain losses on the 2001 taxes along with the $3,605 for her expert fees was classified as dissipation. And the question that this leads to is when you look at the definition of dissipation, it's the use of marital property for the sole benefit of one of the spouses for purposes unrelated to the marriage, occurring at the time the marriage is undergoing irretrievable breakdown. Okay, we've moved a little bit beyond irretrievable breakdown because they got divorced in 2000. So I don't know if you, you know, how you can make a finding of dissipation, which is clearly something that's happening while the divorce proceedings are occurring, and people are hiding things and doing whatever, we're nine years out. It's like this does not fit the definition of dissipation. And basically the court had to strain to find some way to basically whack Dr. Tao on this. And dissipation is what they came up with and what they used because they asked for a finding of dissipation in the rule of the show of cause. But the problem we get into is the amount, $10,400. This is a very interesting amount because there were basically her, Mrs. Tao's expert testified that at most based on the 2001 taxes and the capital gains loss, at most she would have been entitled to one half of $13,000, which basically came to $6,618. If you look at the trial court's order, it says that's not enough. That's not enough. I want to award $10,400, which actually was the full value for the 25% tax bracket. But, and now it gets a little worse because when you see what the expert's saying is, well, he had to admit he didn't know what tax bracket Dr. Tao was in. And then when he finally realized how much he potentially made, he says, well, I think he's in the 25% tax bracket. But he didn't know that he was paying maintenance for $30,000 a year to Mrs. Tao. So that would have made a difference as well. And so as to what the actual loss, capital gains loss could have been is completely speculative. And it doesn't get any better with Mrs. Tao either, even though he was her expert. He didn't know what tax bracket she was in either. He put her at 35%. There's nothing in the record that even says she's employed. The only income that's in the record is the maintenance that's provided to her by Dr. Tao. So we're coming up with all of these potential capital gain losses that can be claimed on taxes. But there's no values beyond what it would be in certain brackets. But there's no finding that anybody's in any bracket. I mean, the whole thing is completely speculative. And the fact that the judge uses amounts that are in excess of what their own expert testified was the greatest amount that could have been found as a capital gain loss. And then whacking him to say you have to pay those fees as well, we think is one more piece of evidence clearly showing that the trial court had a bias towards Dr. Tao and that this whole order was issued to punish him. And that wasn't even the worst one. The worst one's the last one because it gets down to the attorney's fees. With regard to the attorney's fees, the trial court awarded $22,700 in attorney's fees. This is an enforcement action. So we're all standing here saying, hey, that one's okay. We can do that one. That one might be all right. No, the trial court specifically finds that he doesn't have enough information with regard to the attorney's fees to have it fall under the enforcement action and specifically puts in his order, instead of awarding sanctions, I'm going to have him pay all the attorney's fees, even though there's no billing savings in the record and we're not doing it on an enforcement action. That is a criminal contempt penalty. And those penalties basically show that this was a criminal proceeding that was shown to be a civil contempt, and it wasn't. I mean, when you can come up and say civil sanctions, which are prospective in nature, and seek to coerce compliance, and that criminal contempts are for past actions that can't be changed, the only coercion in the judge's order was his threat that if there was any further noncompliance with the orders of the court, that it would result in severe sanctions. As if ordering a doctor to pay over $48,000 wasn't a severe enough sanction to start with. I implore this court to review the decision in Ray Marriage of Parkville. It's a 4th District case that came out in 1992. It is instructive. It is amazingly on point with the issues in this case. The citation is 232 Ill App 3D806. It's in our brief. Basically, the court found the wife in civil contempt because she hadn't put the kid on time. It was between two parents. And he brought a rule to show cause because the child had been put on the plane late twice, once in 2002 and I think once in 2003. And the trial court discusses it and says, look, it was a rule to show cause. It sought sanctions against the wife for past acts that did not seek some future act. They didn't condition the penalty on anything she might do in the future but rather imposed a fine for what she had done. In addressing her procedural rights, it was extremely relevant with the appellate court to note that the rule to show cause, as opposed to a petition for adjudication of criminal contempt, was filed. The wife had never received notes that she faced criminal charges. And although she was granted the right to confront witnesses against her, she did not receive any of her other procedural rights. The penalty in Parkville was $1,000. The appellate court vacated it, said no way, this is criminal. In this one, we have nearly identical facts except the sanctions are $48,722. For these reasons, as well as what we have set forth in our brief, we have asked this court to vacate the trial court decision. Thank you for your argument and that's the opportunity for rebuttal. Mr. Quinn? Good morning, Your Honor. Good morning. May I please look forward? Sure. Lots of issues in an old case that goes a decade long. I recognize you heard a couple of those today. And with that brings problems that were judges retiring in the middle of the case and that kind of thing. And so Judge Schwartz, a lot was made in the brief about the statement about if you don't like the laws of our land, go back to China or words to that effect. And if I had a time machine, I would go back to the five minutes before that and say, don't say that, Judge. But I don't think that's evidence of any racial slur or any racial bias. For one thing, my client is also Chinese and so she apparently didn't get any – So why would you tell him not to say that if there's no – if it doesn't connote some form of prejudice or bias? It's the era of 2011. I just don't think it's ever appropriate to single somebody out by their race. But even in this case, when – Because it could be indicative of prejudice. Someone could read that into it, but I think that the record will show that he had lots of reasons to feel that Dr. Tao is somebody who didn't particularly care for the laws of this country or the judgments of this court. And that ruffled Judge Schwartz's feathers. And I really want to draw your attention to Judge Schwartz's order following judgment that he filed on May 21, 2010, because he spends nine pages to spell out exactly why he did what he did. And in that, he lists the bullet list of bam, bam, bam, bam, bam. He's in contempt because of multiple instances of forging the name of the wife on the amended tax returns, forging the name of the wife on tax refund checks, failing to provide copies of amended returns as was required by the court, when it should have been done a couple of years prior, anticipating marital assets. That's just a partial list. The 10-year period of this case was filled with instances in which Dr. Tao had a rule in the court, didn't really care to follow it. Dr. Tao forges a signature, arguably commits perjury. There are just several instances in which there was just a lack of respect for the court and the laws of the land. And that is where Judge Schwartz's frustration came. And like I said, his nine-page order following judgment spells out the findings of what he found to be to happen throughout the duration of the case and why he ruled which way he did in each of these different issues that Mr. Trevayo has laid out. Well, what about this E-Trade account, the $6,500? Looks like a double recovery to me. Are you talking about the invest bill? Yeah. He awarded the wife half of the $6,500 in E-Trade accounts. And those were investment accounts and also bank accounts in some regard. So why is that not an abusive description? Well, there was an instance, and I think it's outlined within that order following judgment that I just directed your attention to, that he indicates that there was an e-mail indicating that she didn't want to buy the accounts in 2002, but they never really had any solid, tangible exhibit that showed that the exchange never actually occurred. Is the E-Trade and the Invesco the same? No, those are different accounts. Different accounts? Okay. And so there was a lot of, what I like to say, a shell game going on to where there were accounts being purchased after the divorce was filed, before the case was finalized. And each time, this is a time when the stock market is plummeting. But the trial court didn't even hear evidence on this E-Trade account. They refused to hear evidence. Isn't that correct? Well, it's not that they refused to hear evidence. The evidence had been brought at prior hearings that this exchange happened. The court found it to be unbelievable at that period of time, and they were trying to resubmit documents that had been submitted at one or two hearings beforehand. And so I think it was quoted from one of our briefs, a statement about this should have been decided seven years ago. And that was the time that these exhibits were presented to the court. And at that point, the judge, whether it was the time when Judge Jones was presiding or whether it was Judge Schwartz, I don't recall. But at that point, the evidence and the testimony provided by Dr. Powell wasn't believable. And it was inconsistent with a similar document on the same issue from a prior hearing. And so this is just another example of why the credibility of Dr. Powell is considered so low in this court as compared to my credibility. And one thing the counsel made a comment about that I didn't want to jump in and correct is she stated that we had conceded that the issue on the interest because the date wasn't certain. I don't know that I went so far as to concede the issue on the interest. Although I do believe that the date was not – we couldn't say until he said 2008 whether we were using the date in New Year's Day 2001, March 16, 2001, or the date in August of 2001. It was clearly a date around that time. And the Kramer case, which I've cited in my brief, has some – had a very similar issue arise there. And in that case, they made the statement that in order to avoid this confusion, you could have always paid the amount on one of the dates to at least stop the interest from accumulating. I'm paraphrasing. That's not the exact quote, but I did quote it in my brief on that issue. Counsel, let me ask you this. How is an award of attorney's fees an appropriate sanction for indirect civil contempt? Well, I think that an award for attorney's fees would have been appropriate. I think that the bigger issue is – I concede that the bigger issue is the attorney's fees don't appear to be all that well-defined as far as affidavits of attorney's fees and that kind of thing. But I think that the award in and of itself – because what they're seeking is for enforcement of their judgment. And I think that the attorney's fees – an award of attorney's fees is appropriate in enforcing a prior judgment. One issue also that I wanted to definitely bring up was the issue of the dissipation. Ms. Entraia made the statement that the judge awarded more than the figure that the expert used. Scott Hendricks had said that the amount was $13,000-something, and so half of that would be $6,000-something, but then the award ended up being in excess of $10,000. Well, page 7 of that order following judgment, dated May 21, 2010, Judge Schwartz cites a law and explains exactly why he made the award the way he made it. He says, after a fine and a dissipation, a trial court is not required to limit the other spouse's award to cash or property equal to half the amount dissipated. It's not a 50-50 thing is what the judge is saying, and he chose the amount based on what he felt was equitable in light of the fact that Dr. Tao had held on to these assets. He'd gotten to enjoy the benefit of his half of the assets for this decade long that the litigation was going on, whereas my client was not able to enjoy the benefit of the assets that should have been hers. And since the stock market was, like I said earlier, plummeting during this period of time, she was not able to adequately preserve or protect her assets or wasn't able to claim the capital loss that she should have been able to claim on taxes to offset that loss. And so the ability to claim the capital loss is itself an asset that she was deprived the ability to use. And I just respectfully disagree with counsel as far as feeling that the courts don't have any jurisdiction to guard this tax issue. I think that almost every divorce I have been involved in or have been familiar with, the issue of who's going to claim the kids on taxes comes up. The issue of who's going to get what percentage of the refund for this year that we've been living together part of the time and separated part of the time. And the court, the trial courts clearly have the ability to make awards based on and use that as part of their crafting of their awards. And I don't think that they were trying to punish, Judge Schwartz was trying to punish or step into the realm of the U.S. Tax Court to say you didn't check this box properly, you didn't fully report what you were supposed to report. But rather, you didn't comply with an order of the court from way back in the early part of the last decade from 2001 which said split these assets and you get some and your now ex-wife gets some. Rather, he held on to all those assets waiting for, using the excuse that he was waiting for a definitive date to divide the assets. And then while waiting for him to divide the assets, he chose to take all the capital losses. That's different than what I think the U.S. Tax Court would have exclusive jurisdiction on. And so I think that the court clearly has the ability to step in and say you used something that the court has intended to award to you and your wife on a 50-50 basis or something like that. Rather, regardless of the percentage, you used something that was intended to be awarded to your wife and so by doing so I'm going to assess an award or give an award to a wife along with the interest that she's entitled to because of her lost ability to use and enjoy property while you were able to do it to do so at her expense. The loan from the brother, that issue is very similar to the Awan case. And I think the court spells out exactly and on the record very clearly why it found the loan was, Dr. Tao was on the hook for paying or reimbursing part of the loan as a marital asset. And I think that there was testimony from the wife as to the terms of the agreement and the court, as it did on all the other issues, weighed the believability of her testimony, which we found to be quite credible. And weighed that against Dr. Tao's, which we found to be utterly lacking in credibility and determined that that was an appropriate item to also award her, you know, get a cash award on that as well. And so really I think what it all boils down to is, on each of these issues, is what sort of abuse of discretion, is what happened against the manifest way of the evidence and when you take a look at that, you know, standard there, you know, we've got to go, it's a very high threshold. It's like, was it fanciful? No reasonable person would have made that decision. And I think that in his order following judgment, May 21, 2010, he spells out exactly what his mindset was on each of these issues to show that it wasn't fanciful. And these are very much in line with the Hwan cases and the Kramer cases. So clearly, it's not that no reasonable person would have made the same decision because the judges in those cases did make those decisions, you know, on the appropriate issues. And so I respectfully ask that this court affirm on all issues. Thank you. Second one listed, 2000. Third one, 2001. Failing to apportion the refund checks, 2001. Failing to divide the asset, the investment account until December 2003, December 2003. Dissipating marital assets, that goes back to the 2001 taxes. What was Dr. Towns supposed to do about any of this, that this order was going to be coercively changing as required for a finding of indirect civil contempt? This is criminal contempt. This is a monetary penalty which is specifically addressed in Parkland vets and he cannot do it, which makes all the rest of this moot because it all is going to fall under the same category because he could not award penalties on all of this. That's what those cases say. When you get into the e-trade account, basically the judge said that should have been decided seven years ago. Once again, what's he supposed to do about something from seven years ago? In fact, the only thing that was on file seven years ago when the trial court heard this was Dr. Towns petition for enforcement to have Mrs. Towns complete some of the things that were in the order that still had not been done. Then you can also find the email in the record from Mrs. Towns that says, I don't want to split the shares from the e-trade right now. What are we supposed to do with that? You can't do some of these transactions on your own. There have been six lawyers involved in this case prior to Mr. Reed who, bless his heart, were able to finally get things moving and get to out of the standstill. There are real issues with what the judge did in this. While counsel says Dr. Towns was utilizing the capital gain losses at her expense, she never filed the taxes. There were no tax filings in the record with regard to Mrs. Towns. There's no evidence that she ever requested a loss. There's no evidence that she ever contacted the IRS and said, hey, I should have been able to claim this back then, go back and get my husband so that I can claim this, which she could have done. She did not. Basically, she has taken every step that she possibly can to circumvent the subject matter jurisdiction of the U.S. tax court by having the trial court come in and say, your taxes are wrong and we're going to penalize you $10,400. Did the judge have to do it 50-50? No, he didn't. But that's what the testimony was, was that if they were in the highest tax brackets, both of them, the maximum capital gains loss would have been $13,000. Okay, so if it would have been divided the way it was supposed to do, she would have been entitled to the $6,600. That's not what the judge did. Keep reading the judge's order. It's great because it tells basically, especially the one after. When you read the one for the reconsideration, I'm doing this because of his discord and his manipulation of the funds and his improper tax filings. And it's like, this isn't a criminal trial. You found indirect civil contempt. You can't do this. And so for these reasons, we've asked this court to review this matter. And if the issue of, the full issue of the criminal contempt doesn't contain all of the issues, I would really respectfully request that this court would issue a decision with regard to whether a funding anticipation could be made nine years after the parties are divorced when the general definition of that term is during the time when the marriage is being irretrievably broken. And unless there's any other questions, your honor, that's all I have. Thank you both for your briefs and arguments. We'll take the matter under advisory.